CITY OF BELFAST, *Appellants from decision of County Commissioners of Waldo County, on petition of* J. H. KALER *& als.*

By R. S., c. 18, § 35, the committee, appointed in cases of appeal from the decision of county commissioners, "must make their report at the next or second term of the Court after their appointment."

In such cases, the Supreme Judicial Court has no authority to accept a report made subsequently, although the delay in making it was in accordance with the express written agreement of the parties, indorsed on the back of the warrant, at the time of the view and hearing.

Neither can the agreement, so entered into, operate as an estoppel so as to confer jurisdiction upon the Court in the premises.

But in the *execution* of such power they must conform to the provisions of law relating to the laying out of highways.

Chapter 365, of the Special Laws of 1846, providing that "the county commissioners of Waldo county are authorized and empowered to lay out and establish a road over Fish river, in the town of Belfast, if public convenience requires it," simply enlarged the power of the commissioners, without absolving them, while exercising such power, from following the requirements of existing laws in reference to the laying out of ways.

ON FACTS AGREED.

The county commissioners of Waldo county, on petition of J. H. Kaler and others, laid out two highways over tide waters, in the city of Belfast; one on the site of "Nickerson bridge," and the other across "Fish creek."

The city of Belfast appealed, and duly entered their appeal at the October term, 1864, when a committee was duly appointed.

At the succeeding January term, the committee made their report affirming the decision of the commissioners in the "Nickerson bridge" case. Objections were seasonably filed to the acceptance of said report, and it went up to the Law Court. Subsequently to the May term in Waldo, the report of the committee was rejected.

On the warrant to the committee, the following agreement was indorsed : —

"In the matters of inhabitants of Belfast, appellants, be-

fore J. Fowler and others, committee, it is agreed that, if the committee decide to revoke the doings of the commissioners in both cases, their report shall be made at the next term of the Court. In case they decide to affirm said doings, their reports shall be made at next term. But in case they are of opinion that but one of the bridges is required, and thereupon affirm the proceedings in one case, they shall suspend making their report on the other until the question of law which may be raised in the case on which they shall report shall be settled or waived.

"W. G. Crosby, for petitioners.
"A. G. Jewett, City Solicitor."

At the October term, 1865, the committee made their report on the "Fish creek" case. So much of said report as is material is as follows : —

"The undersigned, committee named in the foregoing warrant, having notified the parties, * * met them on the 30th of November, the appellants appearing by A. G. Jewett, City Solicitor, and the original petitioners by W. G. Crosby, their attorney. We then proceeded to view the route * * heard the parties, and decided that the judgment of the county commissioners in the premises should be affirmed in whole.

"The parties having entered into the agreement annexed to this warrant, and which we make a part of this report, we suspended making this report until the question of law raised in the case in which we did report was settled, as by said agreement. And now said question having been settled by the decision of the Supreme Judicial Court, since the term of said Court held on the first Tuesday of May, 1865, we make this our report, that the judgment of the county commissioners in the premises be affirmed in whole."

(Signed by committee.)

"Belfast, Sept. 13, 1865."

To the acceptance of the report, the appellants, by the city solicitor, N. Abbott, Esq., filed objections, of which the following are the only material ones : —

2. Said committee did not make their report at the next or second term of the Court after their appointment.

3. They did not make their report according to the agreement of the attorneys of the parties; and, if they had, the city solicitor had no authority, by agreement, to waive the express requirements of the law.

The warrant, report, agreement between city solicitor, together with the objections filed against the acceptance of the report, were made part of the case; and the Court to render judgment according to the legal rights of the parties.

*N. Abbott*, for appellants.

*W. G. Crosby*, for respondents, contended, —

That the report was not made at the second or next term after the committee was appointed, because the parties agreed that, under a certain contingency, it *should not* be. That contingency occurred.

The meaning of the agreement, though hastily and inartificially drawn, is obvious.

Two ways were laid out over tide waters. Both parties agree that but one of them is required. Both agree that the "Nickerson bridge" site is the preferable one; but this location will give rise to questions of law; if those questions be decided adversely to the original petitioners, they ask for an adjudication on the "Fish creek" location; if that adjudication be favorable to them — affirms the doings of the commissioners — they are desirous, and so are appellants, that the committee shall delay making their report until the Court shall have finally decided the questions of law referred to.

The Court decided adversely to original petitioners in that case, and, at the next term thereafter, the committee made their report in this case; and thus carried out the agreement of parties.

The parties were the original petitioners, and the city appellant. The *former* had a right to insist that the committee, appointed on motion of the *latter*, should report at

the second term, at farthest. They waived that right by agreement with appellants, that, in a certain contingency, the report might be made at a later term.

Whether other parties could be bound by such an agreement is not the question; but it seems clear that the parties might bind *themselves,* and having so *bound* themselves, they are estopped from loosing the bond.

By the terms of the report, the Court is to render judgment according to the *legal rights* of the parties.

The appeal should be dismissed; for it is not properly before the Court.

The way was not laid out under the general statute defining their powers; had it so been, an appeal as provided in that statute would have been proper.

It was laid out under special Act of 1846, c. 365, which gave the commissioners an unrestricted, unqualified, *absolute* power to lay out the way, if in *their* judgment "public convenience" required it. They alone could exercise this power subject to the control of no one; and hence this appeal should be dismissed, with costs for respondents.

KENT, J. — This Court has no jurisdiction of matters concerning the determination as to laying out of roads, except on an appeal from the decision of the commissioners, as to the expediency of the laying out or altering such way. In case of the appointment of a committee by this Court, § 35, c. 18, R. S., their report "shall be made at the next or second term of the Court after their appointment." In this case the report was not made, until the third term after their appointment. In the case of *Inhabitants of Windham, petitioners,* 32 Maine, 452, this point was raised and determined. In that case, the report was made and *accepted* by the Court one term too late. C. J. SHEPLEY, says, — " It was one term too late. The Act required it to be made at the June term. The language of the statute is emphatic and admits of no construction. It is, that the committee shall report at the *next* term after their appointment. This pro-

vision, which was made for the purpose of avoiding delay, not having been complied with, all the subsequent proceedings in the District Court were irregular and void."

But it is contended that the parties interested agreed in writing, that the committee might, in a certain contingency, withhold their report beyond the second term. The written agreement is made part of the case. A strict construction of its language must perhaps lead to the conclusion that the contingency contemplated has not occurred. It provides that, in case they determine to revoke the doings of the county commissioners in *both* cases, or in case they decide to affirm said doings, their reports shall be made at the *next* term. They have in fact affirmed the doings of the county commissioners in both cases.

But if a more liberal construction of the paper would leave it as an agreement or assent of both parties, that the report might be delayed beyond the second term, the question arises whether such consent can give jurisdiction or authority to the Court to receive and accept it at the third term.

The statute does not, as it does in many other cases, give authority to the Court to allow an entry or to receive a report after the time prescribed, in cases of mistake or error. It is, as C. J. SHEPLEY says, " emphatic, and admits of no construction."

There is no doubt that, as to matters purely personal, or where a party has some right or privilege, which he may claim, he may waive it, — as notice, or a right to object to a judge or a juror, or exemption from certain duties. But consent of parties cannot confer a jurisdiction, which is excluded by law. *Carlisle* v. *Weston*, 21 Pick., 536 ; *Smith* v. *Robinson*, 13 Met., 165 ; *Sargent* v. *Hampden*, 29 Maine, 70. The case of *Windham, pet'r*, 32 Maine, (before cited) establishes the point that the report not having been made at the term named in the statute, the Court had no jurisdiction, and even the acceptance of the report by the Court was of no avail.

It has been held in Massachusetts that, where an appeal from the decree of the commissioners of insolvency was not entered at the next term of the Supreme Court, the Court had *no power* to allow the appeal, even if it was not entered at the proper term through accident or mistake.

The statute was held to be imperative and absolute. *Palmer* v. *Dayton*, 4 Cush., 270. And the same Court held, in a subsequent case of a like nature, where the record showed that " all parties interested waived all objection that the said appeal should have been made to the April term," that " the consent of parties, to the entry of this appeal at a term which was not the time fixed by law for such entry, could not give the Court jurisdiction of the appeal." *Eddy's case*, 6 Cush., 28.

We are of opinion that the agreement cannot avail to avoid the statute requirement. For the same reasons, the party, by signing the paper, is not estopped, so as to confer jurisdiction. Jurisdiction given by statute cannot be established, against the positive provisions of the law, by an estoppel, which might bind a party,—as between himself and another party.

The respondents present another question, which lies behind the report and all the objections to it. It is said that this road was laid out by the county commissioners over tide waters, by virtue of a special law of 1846, c. 365. By that statute, " the county commissioners of Waldo county are authorized and empowered to lay out and establish a road over Fish creek, in the town of Belfast, if public convenience requires it." This is the whole statute.

It is contended that this way was not laid out by the commissioners under the general statute, defining their powers, and that no appeal lies from the decision of the commissioners,—that they could lay it out without following the provisions of any other statute, if in their judgment public convenience required it,—that a new power was conferred on them, unrestricted, unqualified, absolute, which they alone could exercise, and in the exercise of which they were

subjected to the control of no one. This argument, when pressed to its ultimate conclusions, would dispense with the petition, the notices, and hearing and allowance of damages. It would allow the commissioners to lay out the road, without other action than a decision that public convenience required it.

Our opinion is, that the object and effect of the statute was simply to enlarge the jurisdiction and power of the commissioners over tide waters. Without this statute they had no such power. The Legislature intended to give them power to lay out a road over this creek, in the same manner and by the same proceedings that are required in the laying out of other highways. It would require the clearest and most explicit language to lead us to the conclusion that the Legislature intended to dispense with all the usual proceedings and safeguards, and to take this particular case out of the general provisions of the statute on the subject of highways. The special statute simply gives the power to lay out a highway over a spot, where before they could not do it, but in the laying out they must follow the requirements of existing laws in reference to the laying out of ways.

*Report not accepted.*

APPLETON, C. J., CUTTING, DANFORTH and WALTON, JJ., concurred.